# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# ASHLAND

**Civil Actions Nos. 15-54 and 15-65-HRW**

| | |
|---|---|
| **EAST COAST MINER, LLC, *et al.*,** | **APPELLANTS,** |
| v.      **MEMORANDUM OPINION AND ORDER** | |
| **NIXON PEABODY, LLP, *et al.*,** | **APPELLEES.** |

This matter is before the Court upon East Coast Miner, LLC and East Coast Miner II, LLC's Appeal from Bankruptcy Court, Judge Tracey Wise's Order Allowing Chapter 11 Professionals' Final Compensation and Payment From Lender's Collateral [Docket No. 1-1]. This matter has been fully briefed by the parties. The Court, having reviewed the record and being otherwise sufficiently advised, hereby affirms the decision of the Bankruptcy Court.

## I.

This case arises from the final fee applications filed in *In Re Licking River Mining, LLC, et. al.,* United States Bankruptcy Court, Case No. 14-10201. Licking River Mining, LLC and their related Debtors, collectively referred to as "Debtors," became Chapter 11 debtors-in-possession in June 2014 after the filing of involuntary petitions against them. That case has a lengthy, tortured procedural history. Before this Court, however, is the review of Judge Wise's opinion that the Carve-Out extends to the East Coast Miners, LLC, East Coast Miner II, LLC, Keith Goggin and Michael Goodwin, collectively referred to as the "Licking River Lenders'", prepetition collateral.

The Bankruptcy Court issued the Carve-Out Opinion, holding that the Licking River Lenders' pre-petition collateral was subject to the Carve-Out under the text of the Final Cash Collateral Order. The Court reasoned, under the text of the Final Cash Collateral Order:

> The budgets specifying the expenses that the Debtors were permitted to pay from the cash collateral and included line items for the Professionals' fees and expenses. The inclusion of the Professionals' fees and expenses in the budgets, to be paid from Lenders' prepetition cash collateral is inconsistent with the notion that the carve-out is limited to the post-petition adequate protection liens.

[Docket No. 9-11, p. 9].

The Court further found that the inclusion of the Committee's Investigation Budget, which was payable from pre-petition cash collateral, within the definition of Carve-Out supported the Professionals' interpretation of the Carve-Out. *Id.* at 10.

As for Licking River Lenders' position that it only applied to adequate protection liens, the Court noted that it not "discern how [their] argument makes sense," because it would "yield[] an illusory and absurd result" in which the Carve-Out applied to adequate protection liens that could attach to virtually nothing. *Id.* at 9.

The Court next held that a finding that the Carve-Out applies to the Licking River Lenders' pre-petition collateral was consistent with the record as a whole and the conduct of the parties. The Court noted that the application of the Carve-Out to pre-petition collateral was confirmed by the colloquy in open court at the first-day hearing. Further, the Court reasoned that the Licking River Lenders' consent to the DIP Orders "confirm that the carve-outs are carve-outs from the [Licking River] Lenders' prepetition liens," as the Carve-Out was senior to Porter's liens which were senior to the Licking River Lenders' pre-

2

petition liens. *Id.* at 11.

Finally, the Court held that the Licking River Lenders had stated "unequivocally" in their credit bid filing that the Carve-Out applied to the Debtors' use of pre-petition cash collateral and that this admission was binding upon them. *Id.*

Based on all of these reasons, the Court held that "the text of the Final Cash Collateral Order extends to the Licking River Lenders' prepetition collateral." *Id.* at 13. Extrinsic evidence was not necessary because the Professionals prevailed as a matter of law.

Following Objections and Orders thereto, Licking River Lenders did not consent to the entry of orders allowing payment of the Professionals' fees and expenses.

Subsequently, the Professionals filed a joint motion for the entry of orders on the Fee Applications in order to finally receive payment on account of their unpaid fees and expenses, The Licking River Lenders again objected.

Following a hearing, the Bankruptcy Court entered a Memorandum Opinion and Order Allowing Chapter 11 Professionals' Final Compensation and Payment from Lenders' Collateral [Docket No. 1-1].

In the Fee Order, the Bankruptcy Court rejected the Licking River Lenders' arguments that attempted to challenge the immediate payment of the Professionals' fees, including the argument that the Bankruptcy Court lacked jurisdiction to order the payment due to the filing of a notice of appeal on the Procedural Order. *Id.* at 5-13.

The Court therefore approved the Fee Applications and authorized the Trustee to pay a total of $2,432,563.58 to the Professionals from the Licking River Lenders' alleged pre-petition collateral. *Id.* at 15.

3

Appellants filed a Notice of Appeal [Docket No. 9-14] and alleges the following issues:

(1)  Did the Bankruptcy Court improperly look outside the four corners of the Cash Collateral Order to interpret same, without first determining that the Cash Collateral Order was ambiguous?

(2)  If the Bankruptcy Court did in fact interpret the express terms of the Cash Collateral Order to provide that the Carve-Out extended to the Licking River Lenders' Prepetition Collateral, without consulting extrinsic matters, did it err?

(3)  Did the Bankruptcy Court err in its interpreting the Cash Collateral Order, by finding a purportedly "absurd result" (the result being that the Professionals were not paid in full for their fees and expenses when the Debtor ran out of operating funds)?

(4)  Is ensuring the payment of estate professionals a purpose of bankruptcy law that supersedes the principles of contract interpretation or the general rule that administrative expenses, absent an agreement to the contrary, must be paid from unencumbered assets?

(5)  Did the Bankruptcy Court err in determining that the security given to the Professionals in the Cash Collateral Order was "illusory"?

(6)  Did the Bankruptcy Court err in concluding that the Professionals would not have provided services absent the assurance that their fees and expenses would be secured and paid in full by carving out sums for payment from the Lenders' Prepetition Collateral?

(7)  Did the Bankruptcy Court err in determining that I) a statement of the Lenders in

4

pleadings of record; ii) Lenders non-objection to terms of debtor-in-possession financing; and iii) the Lenders' failure to object to statements made by other parties that referenced a carve out in the context of weekly budgeted expenses – constitute judicial admissions?

[Docket No. 8 at xi-xii].

## II.

"The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court." *In re Telex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993); *see also In re Dow Corning, Corp.*, 456 F.3d 668, 674-75 (6th Cir. 2006). Where a bankruptcy court "modifies" a plan, the decision is subject to de novo review. Dow Corning, Corp., 456 F.3d 668, 674-75. Where a bankruptcy court "applies" the Bankruptcy Code, its determinations are also subject to de novo review. *Id.* Where a bankruptcy court interprets its own prior orders and acts, it is subject only to review for a clear abuse of discretion." *In re Special Metals Corp.*, 360 B.R. 244, 247 (E.D. Ky. 2006)( *citing Enodis Corp. v. Employers Ins. Of Wausau (In re Consolidated Industries Corp.)*, 360 F.3d 712, 716 (7th Cir. 2004). The parties differ on the standard of review to be applied in this case. Appellants urge this Court to review Judge Wise's Order *de novo*. However, as this appeal involves her interpretation of her Order, as opposed to a question of law, a the more deferential "abuse of discretion" standard is warranted.

## III.

Appellants' assignments of error are directed at Judge Wise's interpretation of the Final

Cash Collateral Order.

As noted by Circuit Judge Boggs in *In re Hughes-Bechtol, Inc.*, 225 F.3d 659 (6th Cir. 2000)(unpublished opinion):

> The principles of contract interpretation as recognized by this court first require looking to the explicit language of, in this case, the cash collateral order for "clear manifestations of intent." Further, each provision in question should be interpreted "as part of the integrated whole. If at all possible, each provision "should be construed consistently with the entire document and the relative positions and purposes of the parties ... [because] [t]he intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion.

*Id.* at *3 (internal citations omitted).

The Final Cash Collateral Order provides, by it very terms, that the Carve-Out extends to the Licking River Lenders' pre-petition collateral. In the order, Judge Wise stated:

> As generally used, a carve out is an agreement between a secured lender, on the one hand, and the trustee or debtor in possession . . ., on the other, providing that a portion of the secured creditor's collateral may be used to pay administrative expenses. The agreement, which is subject to court approval, usually limits the nature, amount, and timing of expenses covered, often by reference to a budget. For example, the carve out in a debtor in possession financing order may be limited to professional fees for the debtor, for the committee, and for a superseding trustee. The carve out will usually be limited to a maximum amount, and its continuing availability may be conditioned on the occurrence on nonoccurrence of an event, such as a default under the financing documents. Until the event, the debtor may pay administrative expenses from its operating cash flow.

[Docket No. 9-11, p.8](internal citations omitted).

Pursuant to approved budgets, the Licking River Lenders consented to the use of their cash collateral subject to their alleged pre-petition liens in order to pay professional fees under

6

the "Carve-Out" set forth in the Final Cash Collateral Order. [Docket No. 9-4]. As Judge Wise found, absent this Carve-Out from the Licking River Lenders' pre-petition liens, there was no basis to pay professional fees from pre-petition cash collateral.

The Final Cash Collateral Order defines the scope of the Carve-Out, namely that (a) *all* allowed fees incurred prior to the "Trigger Date" are included in the Carve-Out, and (b) $500,000 in fees are included in the Carve-Out for periods after the Trigger Date. *Id.* at ¶ 12(e).

Notably, definition of "Carve-Out" in the Final Cash Collateral Order specifically provides for payments from the Licking River Lenders' pre-petition collateral. The definition of Carve-Out includes the Committee's use of a $150,000 Investigation Budget to analyze the liens and claims of the Licking River Lenders. *Id.* According to the Order, the "Investigation Budget" is payable from the Licking River Lenders' cash collateral subject to their alleged pre-petition liens, and also has no relationship whatsoever to alleged "adequate protection liens." *Id.* at ¶ 10. Thus the text itself establishes that the "Investigation Budget" could **not** be part of the Carve-Out unless the Carve-Out covers the Licking River Lenders' prepetition collateral.

Finally, the Carve-Out also covers the statutorily required fees payable in chapter 11 cases to the U.S. Trustee under 28 U.S.C. § 1930. Those fees are required to be paid in chapter 11 cases from cash collateral, irrespective of any pre-petition liens, otherwise there can be no chapter 11 case. Logic provides that the U.S. Trustee fees would not only be "carved out" out of potential adequate protection liens and that the Licking River Lenders would retain the right to insist that their pre-petition liens primed any unpaid U.S. Trustee fees.

It would appear that Judge Wise reasonably looked to the text and terms of the Final Cash

7

Collateral Order in making her decision and the Court finds no error in this regard.

The Licking River Lenders argue that the Bankruptcy Court erred by considering what they term "extrinsic evidence" by considering other orders it entered and the record as a whole in interpreting the Final Cash Collateral Order. However, a cash collateral order is more akin to a consent decree than a typical contract. *In re Hughes-Bechtol, Inc.* at *4. Therefore, considering the contours of it in a vacuum may lead to an interpretation which runs afoul its intent.

In this case, Judge Wise looked to the record, to-wit, the representations in the Cash Collateral Motion, the statements at the first-day hearing, the filings and court hearings in connection with the Termination Motion, and the conduct of the parties, and found that it supported her conclusion that the prepetition collateral was subject to a carve-out for professional fees. Most notable of Judge Wise's reference to the colloquy in open court, during the first-day hearing, wherein Appellants confirmed that all security interests of the Licking River Lenders were subject to the Carve-Out:

> THE COURT: All right, let the Court ask a couple of questions and then I'll hear from any other parties. First of all, in paragraph ten of the proposed order -- and my questions will all be about the proposed interim order. As I understand the carve-out, the budget provides a carve-out for the Debtors' professionals over the thirteen week period, if I'm reading that correctly? Is that a million dollars, roughly -- half a million, per budget?
> MS. DELCOTTO [Counsel for the Debtors]: I think that's correct, Your Honor.
> THE COURT: And, then there's a carve-out for committee professionals of one hundred thousand dollars, per month, for all committee professionals, is that correct?
> MS. DELCOTTO: That's correct.

[Docket No. 9-3, pp. 27-28].

Absent from the transcript is any objection, clarification or complaint from the

8

Appellants.

The Court finds that matters considered by Judge Wise support her interpretation of the text and terms of the Final Cash Collateral Order and she did not abuse her discretion in this regard.

Appellants maintain that although they agreed the **temporary** use of its Cash Collateral to pay the Professional Fees, it did not intend it to be permanent security in said Cash Collateral once that use terminated. Yet, this argument would render the language Carve-Out all but meaningless as it provided for "[t]he inclusion of the Professionals' fees and expenses in the budgets, to be paid from Lenders' prepetition cash collateral is inconsistent with the notion that the carve-out is limited to the post-petition adequate protection liens."

## IV.

Accordingly, for the reasons stated herein, the Court hereby **AFFIRMS** the Bankruptcy Court. A separate judgment shall issue this day in conformity with the Court's Memorandum Opinion.

This 3rd day of October, 2017.

Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge